IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE S.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 50310 |
| v. ) | |
| ) | Magistrate Judge Laura K. McNally |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

### ORDER[3]

Before the Court is Plaintiff Christine S.'s motion for summary judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision denying her applications for disability benefits (D.E. 1: Pl. Mot. for Summ. J., "Pl. Mot.") and Defendant's response in support of the motion for summary judgment (D.E. 11: Def. Mem. In Support of Mot. for Summ. J., "Resp.").

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court.
[2] The Court substitutes Martin O'Malley for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).
[3] On September 12, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (D.E. 7.)

I. **Procedural History**

Plaintiff applied for disability insurance benefits on January 11, 2021, alleging disability beginning October 26, 2020. (R. 13.) The ALJ held a telephone hearing on February 28, 2022, and on March 23, 2022 the ALJ issued a written decision denying Plaintiff's application, finding her not disabled under the Social Security Act.[4] This appeal followed. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

II. **The ALJ Decision**

The ALJ applied the Social Security Administration's five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. 15.) At Step Two, the ALJ determined that Plaintiff suffers from severe impairments of multiple sclerosis (MS) and polyneuropathy (mild), both of which significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. (*Id.*) The ALJ did not find that Plaintiff had any medically determinable mental impairments.

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal a Listing. (R. 16.) Before Step Four, the ALJ assessed a residual functional capacity for Plaintiff to perform light work except that she can "never climb

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

ladders, ropes, or scaffolds, and never crawl" but "can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch" and can "frequently feel with the bilateral upper extremities." (R. 17.) Plaintiff must additionally avoid concentrated exposure to extreme cold, wetness, vibrations, unprotected heights and dangerous heavy moving machinery; and avoid moderate exposure to extreme heat. (*Id*.)

At Step Four, the ALJ found Plaintiff is capable of performing her past relevant work as a pharmacy technician and salesclerk. (R. 21.) Because the ALJ found that Plaintiff's past relevant work did not require the performance of work-related activities precluded by her residual functional capacity, Plaintiff's inquiry ended and the ALJ determined that Plaintiff was not disabled. (R. 21-22.)

### III. Legal Standard

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions, known as "steps," in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

3

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4). An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step other than at step three precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work that exists in significant numbers in the national economy. *Id.*

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review."

4

*Id*. at 1054. The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit has further clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV.   Analysis

Plaintiff makes two arguments in favor of remand: 1) the ALJ failed to accommodate Plaintiff's gait, standing, gripping, and balance issues in the residual functional capacity determination (Pl. Mot. 7-12), and 2) the ALJ failed to account for work-related limitations arising out of Plaintiff's dizziness, "brain fog," and fatigue. (Pl. Mot. 12-14.) Each of these issues disputes the residual functional capacity determination, asserting the ALJ failed to accurately account for the record evidence. But as explained below, the Court finds that the ALJ supported her decision with substantial evidence, and none of Plaintiff's assignments of error warrant remand.

5

A. <u>The ALJ Did Not Ignore Evidence in Determining Plaintiff's Residual Functional Capacity.</u>

In determining that Plaintiff has a residual functional capacity for light work with additional limitations, the ALJ considered both objective and subjective evidence. In so doing, the ALJ substantially supported her ultimate conclusion that Plaintiff was not disabled. While Plaintiff argues that the ALJ "ignored documented symptoms," she does not identify any significant line of evidence that the ALJ did not consider. *See, e.g.*, *Combs v. Kijakazi*, 69 F.4th 428 (7th Cir. 2023) ("Although the ALJ may not ignore 'an entire line of evidence that supports a finding of disability,' the ALJ is "not required to mention every piece of evidence" (internal citations omitted).)

In making her determination, the ALJ acknowledged nearly all of Plaintiff's subjective allegations, including that since having Covid-19 in November 2020, Plaintiff has experienced chronic pain in her legs, unpredictable dizzy spells, and difficulty standing or walking for long periods. (R. 17.) The ALJ also acknowledged Plaintiff's testimony that "she no longer drives because of her dizziness and because her right foot randomly goes numb." (R. 18.) The ALJ further mentioned Plaintiff's testimony that she could not stand for more than ten minutes and had difficulty lifting anything because she had weakness in her arms and hands. The ALJ also recognized that Plaintiff reported fatigue, a need to nap during the day, and leg stiffness and spasms. (*Id.*)

Plaintiff's allegation that the ALJ ignored evidence seems to be premised on her contention that her symptoms worsened in July 2021 and that the ALJ did not account

6

for this exacerbation in determining Plaintiff's residual functional capacity. (Pl. Mot. 9.) The ALJ specifically discussed Plaintiff's allegations about her worsening symptoms and evaluated them against evidence that contradicted those allegations. For the time period between July 2021 and December 2021 in particular, the ALJ pointed to neurology notes from December 21, 2021 indicating that Plaintiff's multiple sclerosis symptoms had been stable and that she self-reported her symptoms were not worse than 6-12 months prior. (R. 19.) The ALJ noted that these reports revealed an improvement compared to the July 2021 visit, at which Plaintiff reported worsening symptoms, including difficulty standing, fatigue, spasms, numbness, dizziness, and unsteady balance. (*Id.*)

Moreover, the ALJ considered the breadth of medical evidence from the entire claims period in making her residual functional capacity determination. Specifically, the ALJ discussed:

- Various diagnostic studies and MRIs of the brain between August 2017 and December 2021 that show a peripheral neuropathy diagnosis and otherwise stable multiple sclerosis with no new dominant or enhancing lesions (*id.*);

- Plaintiff's treatment with neurologist Dusan Stefoski, M.D. with routine visits and follow up appointments approximately every six months, a rate consistent with that of her routine today (*id.*);

- Treatment notes from visits with Dr. Bangash indicating that Plaintiff's treatment—consisting of infusions every six months, a trial of Ampyra, Baclofen for painful spasms, and physical therapy—had been helpful and effective in controlling her multiple sclerosis symptoms, and that her last relapse or flare was in December 2017 before infusions (*id.*);

7

- Treatment notes between December 2019 and June 2021 that reveal generally well-controlled and stable multiple sclerosis symptoms, some of which included Plaintiff's own denial of new or worsening symptoms;

- Physical examination findings from a series of examinations from December 2019 to December 2021 indicating generally good strength, coordination, and sensation, with the exception of reduced sensation in the right and left lower extremity to vibration, and abnormal/wobbly tandem gait (R. 18-20);

- Plaintiff's treatment with primary care physician Ifzal K. Bangash, M.D., whom she visited on March 9, 2021 after reporting in February 2021 that she had not been to a primary care physician in years (*id.*);

- Physical therapy records from July 2021 which reveal that Plaintiff was not performing home exercises as often as she should and that she missed serval appointments (R. 18); and,

- December 2021 physical therapy records that show Plaintiff had made excellent progress and met 95% of goals, as well as Plaintiff's report in December 2021 that she attended physical therapy weekly and that it has been helping. (*id.*)

The ALJ additionally weighed the two medical opinions in the record as support for her residual functional capacity assessment. (R. 21.) In considering such opinions, an ALJ is required to "evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022); *see also* 20 C.F.R. § 416.920c(c)(1)-(5). An ALJ must explain how she considered the first two factors, supportability and consistency, but is

8

not required to explain her consideration of the other factors. 20 C.F.R. § 416.920c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4; 20 C.F.R. § 416.920c(c)(1). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.*; *see also* 20 C.F.R. § 416.920c(c)(2).

    State agency doctor Charles Kenney, M.D., opined that Plaintiff could perform work at the medium exertional level. (*Id.*) The ALJ found Dr. Kenney's opinion unpersuasive because it was inconsistent with evidence showing Plaintiff's continued complaints of dizziness, difficulty standing/waking, gait abnormalities, and decreased strength on occasion. (*Id.*) Plaintiff does not challenge the ALJ's conclusions regarding Dr. Kenney's opinion.

    State agency doctor Lenore Gonzalez, M.D., assessed Plaintiff as being able to work the light exertional level. The ALJ found this opinion from September 2021 persuasive because it was supported with an explanation and was "consistent with the other evidence in the file, including the treatment history and the examination findings, including the claimant's gait, tandem gait, waxing and waning symptoms including 4-5/5 strength noted in July 2021, 5/5 strength noted in December 2021, impaired sensation in the lower extremities to vibration, and her complaints of fatigue." (*Id.*) Dr. Gonzalez also included in the opinion postural, manipulative, and environmental limitations. (*Id.*)

9

The ALJ supported her determination with an analysis of these medical opinions and the objective medical evidence available, including some that accounted for Plaintiff's "reports of limitations with standing and balance issues, her reports of occasional fatigue (particularly before her infusions are due), her diagnosis of multiple sclerosis and mild neuropathy, the MRIs, the claimant's treatment history and the relative effectiveness of her medications, the examination findings as noted above (often with normal strength/tone) as well as her activities of daily living." (R. 21.) The ALJ listed these as sources of support for working at the light exertional level.

The ALJ also assessed Dr. Gonzalez's opinion regarding Plaintiff's postural, manipulative, and environmental limitations. She outlined the reasons each limitation responded to Plaintiff's symptoms from the medical record, including her mildly unsteady gait, difficulty with stairs, balance issues, intermittent tingling in the hands, and dizziness. (*Id*.) Overall, the ALJ's opinion reasonably concluded Dr. Gonzalez's opinion was supported by and consistent with the available medical evidence.

Importantly, Plaintiff does not argue that the ALJ erred in her consideration of Dr. Gonzalez's opinion, which the ALJ adopted nearly verbatim in her residual functional capacity determination. Nor does she point to any more restrictive medical opinion that the ALJ should have adopted instead. In such circumstances, the Seventh Circuit has stated, "The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that

10

the ALJ misjudged the evidence so significantly as to warrant reversal." *Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023).

Moreover, the ALJ's decision to favor Dr. Gonzalez's opinion regarding residual functional capacity over Dr. Kenney's opinion illustrates, "reasoned consideration." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (an accommodation that is "more limiting than that of any state agency doctor or psychologist, illustrat[es] reasoned consideration given to the evidence."); *see also Karla J.B. v. Saul*, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more—not fewer—restrictions on Plaintiff's RFC. Again, this is a quizzical argument."). The Court finds no error in the ALJ's conclusions regarding the relative weight to be given the opinions of the state's medical experts.

    B. <u>The ALJ Properly Considered Plaintiff's Gait, Standing, Gripping, and Balance Issues.</u>

In light of the ALJ's consideration of nearly all of the objective and subjective evidence, Plaintiff's argument that the ALJ failed to accommodate Plaintiff's gait, standing, gripping, and balance issues in the residual functional capacity determination amounts to an impermissible request to reweigh the evidence. The Court concludes that the ALJ properly considered both Plaintiff's subjective allegations of pain and her testimony about her daily activities before determining that Plaintiff's pain was inconsistent and not as severe as she alleged.

11

When assessing a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). As long as an ALJ gives specific reasons supported by the record, "we will not overturn a credibility determination unless it is patently wrong." *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021). The ALJ's credibility analysis met this standard.

Indeed, as described above, the ALJ not only accounted for Plaintiff's subjective symptoms of gait, standing, gripping, and balance issues, she cited their existence as the very reason for finding Dr. Kenney's report unpersuasive. (R. 21.) In adopting Dr. Gonzalez's more restrictive opinion instead, the ALJ stated that "while [Dr. Kenney] supported his findings with an explanation based on a review of the evidence, his findings are inconsistent as additional evidence has been receiving [sic] demonstrating the claimant's continued complaints of dizziness and difficulty standing/walking, examination findings of gait abnormalities and decreased strength on occasion, and testimony." (R. 21.) In so doing, the ALJ weighed Plaintiff's subjective evidence and granted a more limiting residual functional capacity than even some of the objective medical evidence allowed.

Further, the ALJ's conclusions regarding Plaintiff's subjective symptom analysis were supported by substantial evidence. She considered Plaintiff's report of daily

12

activities which indicated as of February 28, 2021 that she drove and took care of herself without assistance, visited family or attended her daughter's sports events 2-3 times a week, and rode a recumbent bike 20-30 minutes a day. (R. 20.) The ALJ also noted Plaintiff's self-report in December 2020 that she could walk more than a mile and in June 2020 that she could exercise and do physical activities like walking. (*Id*.) Finally, the ALJ also noted that Plaintiff's decision to leave her prior job in October 2020 appeared to be a result of her move to a new home, which would have lengthened her commute to an undesirable level. (*Id*.) And while Plaintiff argues that her hearing testimony establishes that she no longer engaged in many of these activities as of July 2021, the ALJ specifically acknowledged Plaintiff's contention that her MS worsened and noted that "she later reported that she no longer cooked or cleaned and had assistance with those activities. She later reported using a walker as needed for walking and standing." (R. 17.)

      The ALJ thus acknowledged both objective and subjective evidence of Plaintiff's pain complaints, medical records and examinations, her conservative treatment, the medical opinions, and Plaintiff's daily activities before determining that her subjective symptoms were not as severe as alleged. The ALJ's assessment was not "patently wrong." *See Deborah M.*, 994 F.3d at 789.

C. <u>The ALJ Properly Addressed Plaintiff's Assertions Regarding Dizziness, Brain Fog, and Fatigue.</u>

Finally, Plaintiff asserts that the ALJ's residual functional capacity determination did not account for work-related limitations from Plaintiff's dizziness, "brain fog," and fatigue. Specifically, Plaintiff complains that while the ALJ considered mental functioning in the context of determining that Plaintiff's multiple sclerosis does not meet the test for a Listing (Step Three),[5] the ALJ erred when she did not revisit mental functioning as part of the residual functional capacity determination. (Pl. Mot. 12.) Plaintiff asserts that "the ALJ failed to consider how Plaintiff's mental deficits, combined with severe MS and polyneuropathy—impairments that result in fatigue, dizziness, weakness, balance issues, and widespread, chronic pain—impact her ability to remain on task sufficiently to sustain non-exertional work-related activities, five days per week, eight hours per day." The Court disagrees.

The ALJ considered the dizziness and fatigue Plaintiff reported in determining Plaintiff's residual functional capacity (R. 18), including the worsening of these symptoms, per Plaintiff's claims. (R. 19.) The ALJ explained that when weighing Plaintiff's claims of dizziness and fatigue alongside records in which Plaintiff denied such symptoms to treating medical professionals, the ALJ found inconsistencies. (R. 20.) Even so, in her final determination, the ALJ acknowledged Plaintiff's "reports of

---

[5] Plaintiff acknowledges that she does not assert that the ALJ erred at Step Three. (Pl. Mot. 12.)

14

occasional fatigue (particularly before infusions are due)" (R. 21) and stated that her addition of postural limitations "account[s] for safety issues, potential medication side effects, dizziness, and neuropathy as well as [prevents] symptom aggravation and/or exacerbation." (*Id*.)

Plaintiff does not allege that she has a mental impairment and cites to no evidence regarding mental disability that the ALJ disregarded. Accordingly, Plaintiff's assignments of error do not meet the stringent test to warrant reversal.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum seeking to reverse and remand the ALJ's decision (D.E. 9) and grants Defendant's motion to affirm (D.E. 11).

**SO ORDERED.**

                                           **ENTER:**

                                           */s/ Laura K. McNally*

                                           **LAURA K. MCNALLY**

                                           **United States Magistrate Judge**

**DATED: December 19, 2024**